[No. S054624. Dec. 4, 1997.]

ROGER D. MOELLER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SANWA BANK, Real Party in Interest.

**COUNSEL**

Lynch & Lynch, Kevin G. Lynch, Craig M. Lynch, Ross, Sacks & Glazier, Bruce R. Ross and Terrence M. Franklin for Petitioner.

No appearance for Respondent.

Stephen H. Weiss, Jill Switzer, Phyllis A. Siegel, Mitchell, Silberberg & Knupp, Hayward J. Kaiser, Allan B. Cutrow, Richard B. Sheldon, Greines, Martin, Stein & Richland, Kent L. Richland and Carolyn Oill for Real Party in Interest.

Christopher Chenoweth, Haight, Brown & Bonesteel, Roy G. Weatherup, R. Roy Finkle, Bronson, Bronson & McKinnon, James C. Krieg, Elizabeth A. Erskine, Loeb & Loeb, Andrew S. Garb, Jeffrey M. Loeb and David C. Nelson as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**WERDEGAR, J.**—In this proceeding for an accounting, the successor trustee of a private express trust seeks to discover from the predecessor trustee documents reflecting confidential communications between the predecessor and an attorney on matters of trust administration. The question before us is whether the predecessor trustee may assert the attorney-client privilege as to such documents and thereby withhold them from the successor. We conclude the answer is no. Upon taking office, a successor trustee assumes all of the powers of trustee, including the power to assert the attorney-client privilege as to confidential communications on the subject of trust administration. Therefore, we affirm the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

George J. Moeller and his wife, Grace Todd Moeller, as trustors, established a trust. Initially George was trustee; later, real party in interest Sanwa Bank (hereafter Sanwa) succeeded to this position. Among the beneficiaries of the trust is the Moellers's son, petitioner Roger D. Moeller (hereafter Moeller). The trust property consisted of certain interests in real estate in Southern California, including an undivided one-quarter interest in certain real property in the City of Los Angeles. Sanwa's management of this interest is the subject matter underlying the instant dispute.

For many years, a chrome plating business was operated on the property in Los Angeles. The Environmental Protection Agency eventually ordered the removal of certain toxins that had been deposited on the property as a result of the business. The costs of this cleanup and associated litigation depleted the trust of assets.

Subsequently Sanwa resigned as trustee, and Moeller succeeded to that position. Upon its resignation, Sanwa submitted a final accounting, petitioned for settlement, and sought to recover from the trust the expenses it had incurred in the cleanup of the Los Angeles property, a trustee's fee, and attorney fees.

Moeller objected to Sanwa's accounting and petition on several grounds. He complained that the accounting contained errors and omissions and lacked supporting evidence for alleged commitments, the assets and liabilities of the trust were not enumerated properly or described adequately, major contingent obligations that were alleged exceeded the trust resources and were not disclosed adequately to the beneficiaries or the successor trustee, and certain expenditures and advances had resulted from imprudent decisions by Sanwa.

Soon thereafter, Moeller formally demanded production and inspection of certain documents and records related to Sanwa's administration of the trust. The requested papers included: (1) engagement letters, agreements, letters, notes, memoranda, files, telephone notes, invoices, and billings pertaining to legal services provided to the trust; (2) files, memoranda, notes, accountings, billings, and invoices pertaining to any entity that performed services for the trust, including Sanwa, environmental consulting firms, accounting firms, contractors, and subcontractors; and (3) communications, notes, and memoranda between Sanwa and any governmental agency pertaining to trust assets.

Sanwa responded it had already produced many of the documents and records Moeller demanded. Sanwa also claimed those it had not produced were protected from disclosure by the attorney-client privilege. Sanwa asserted the privilege as to all the demanded documents and records except those containing communications between Sanwa and any governmental agency pertaining to trust assets.

Moeller moved for an order to compel full compliance with his demand for production and inspection. He contended Sanwa could not invoke the attorney-client privilege because that privilege belongs to the office of trustee, not to any particular person who at one time or another serves as the trustee. In opposition, Sanwa argued that when a trustee retains counsel, the client for purposes of the attorney-client privilege is the trustee personally and not the trust or the office of trustee. The trial court agreed with Sanwa and ruled that "Sanwa Bank, as former trustee, held and properly asserted an attorney-client privilege and that said privilege neither inured nor transferred to Sanwa's successor, [Moeller]."

Moeller petitioned the Court of Appeal to issue a writ of mandate to compel the trial court to order the production and inspection of the documents and records he had demanded. That court held, "Because the predecessor trustee has a duty to transfer the trust property to the successor trustee, because the successor trustee has a duty to take and keep control of the trust property, and if necessary, to take reasonable steps to compel a previous trustee to deliver the trust property to the successor trustee, and because *Strauss* [v. *Superior Court* (1950) 36 Cal.2d 396 [224 P.2d 726]] holds that trust property includes a trustee's records regarding the administration of the trust, it is clear that petitioner, in his capacity as trustee, has the right and duty to compel Sanwa to transfer its Trust records to him." Accordingly, the Court of Appeal issued the writ.

We granted Sanwa's petition for review.

DISCUSSION

■ This case presents the following question: Does the attorney-client privilege permit a predecessor trustee to withhold from a successor trustee documents related to trust administration? Both settled law and practical considerations lead us to conclude the answer is no.

■ Before addressing the dispute between the predecessor trustee and the successor, however, we address a threshold issue: Can a trustee be a holder of the attorney-client privilege? In other words, does a trustee generally have the power to assert the attorney-client privilege to prevent disclosure of confidential communications between the trustee and an attorney consulted on behalf of the trust? As common sense suggests, the answer is yes.

Evidentiary privileges are creatures of statute. (Evid. Code, § 911; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496].) Consequently, whether a trustee can claim the attorney-client privilege, and thereby prevent discovery of confidential communications it has had with an attorney, depends upon statute. A "client" ordinarily has a privilege to refuse to disclose confidential communications the client has had with an attorney. (Evid. Code, § 954.) For purposes of the attorney-client privilege, the term " 'client' means a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity. . . ." (Evid. Code, § 951.) A trustee therefore can claim the attorney-client privilege if the trustee, *qua* trustee, has the power to become an attorney's client.

A trustee's powers include those specified in the trust instrument, those conferred by statute, and those needed to satisfy the reasonable person and prudent investor standards of care in managing the trust. (Prob. Code, §§ 16200, 16040, subd. (a), 16047, subd. (a).)[1] Although the Moeller trust instrument does not expressly authorize its trustee to claim the attorney-client privilege, it does expressly bestow on its trustee all powers the law confers upon trustees. It provides, "[i]n addition to all other powers and discretions granted to or vested in the trustee *by law* or by this instrument, the trustee shall have the following powers and discretions . . . ." (Italics added.) Consequently, if a statute so permits, the trustee of the Moeller trust may become an attorney's client and, correlatively, exercise the attorney-client privilege.

The Probate Code implicitly authorizes a trustee to become an attorney's client and to claim the attorney-client privilege. A trustee may hire an

---

[1]All subsequent statutory references are to the Probate Code unless otherwise noted.

attorney "to advise or assist the trustee in the performance of administrative duties." (§ 16247.) A trustee may also "prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." (§ 16249, subd. (a).) Of course, a trustee involved in litigation concerning the trust may hire a lawyer—indeed, the trustee often would be well advised to do so. Any trustee who exercises the powers granted in sections 16247 and 16249 "consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity" (Evid. Code, § 951), and the trustee does so on behalf of the trust. Therefore, the trustee, *qua* trustee, becomes the attorney's client.

 The attorney-client privilege follows from the establishment of the professional relationship between client and attorney. Once this relationship is established, the attorney-client privilege attaches to communications made in confidence during the course of the relationship. (*Holm* v. *Superior Court* (1954) 42 Cal.2d 500, 507 [267 P.2d 1025]; *City & County of San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418].) The client may assert the privilege and refuse to disclose confidential communications as long as the client is the holder of the privilege. (Evid. Code, § 954.) Accordingly, we conclude that when Sanwa, as trustee of the Moeller trust, secured the advice of an attorney, Sanwa became the attorney's client and acquired the right to claim the attorney-client privilege with regard to communications made in confidence during the course of the attorney-client relationship. Furthermore, Sanwa retained that right as long as it remained the holder of the privilege.

This brings us to the dispositive inquiry: Who is currently the holder of the attorney-client privilege with regard to the legal advice Sanwa procured on behalf of the Moeller trust while Sanwa was trustee? Sanwa contends that its privilege to refuse to disclose confidential communications with its attorneys while it was acting as trustee is personal to itself and that Sanwa retains the privilege as long as Sanwa exists. Under this view, if accepted, it would follow that Sanwa might properly invoke the privilege against Moeller, the successor trustee. Moeller, on the other hand, argues the attorney-client privilege "vest[s] in the office [of the trustee] and not in any particular individual or entity who at one time was the trustee . . . ."[2] According to Moeller, when Moeller succeeded Sanwa as trustee, Sanwa lost (and Moeller acquired) the privilege to refuse to disclose confidential attorney-client communications regarding Sanwa's administration of the trust.

---

[2]Sanwa interprets Moeller's argument to be that "the 'office of trustee' is the client when a trustee consults legal counsel about trust administration." If this were Moeller's argument, it would fail simply as a matter of linguistics, for only a "person" can be a "client" (Evid.

Under this view, if accepted, it would follow that Sanwa could not invoke the attorney-client privilege against Moeller in this proceeding. We conclude Moeller is correct.

■ The powers of a trustee are not personal to any particular trustee but, rather, are inherent in the office of trustee. It has been the law in California for over a century that a new trustee "succeed[s] to *all* the rights, duties, and responsibilities of his predecessors." (*Fatjo* v. *Swasey* (1896) 111 Cal. 628, 636 [44 P. 225], italics added; see also *Baumann* v. *Harrison* (1941) 46 Cal.App.2d 84, 93 [115 P.2d 530].) In accord is the Restatement Second of Trusts section 196, page 431: "The powers conferred upon a trustee can properly be exercised by his successors, unless it is otherwise provided by the terms of the trust." California courts have explicitly adopted this rule as the law of this state. (See *Estate of De la Montanya* (1948) 83 Cal.App.2d 322, 328 [188 P.2d 494]; *Estate of Canfield* (1947) 80 Cal.App.2d 443, 447 [181 P.2d 732].) The rule applies, of course, to powers essential to effective administration of the trust. (Rest.2d Trusts, § 196, com. b.) As discussed earlier, the power to assert the attorney-client privilege follows from the trustee's power to hire an attorney in order to obtain advice regarding administration of the trust and to litigate to protect trust property. The trustee's power to assert that privilege thus is certainly essential to its effective administration of the trust. Therefore, when a successor trustee takes office it assumes all of the powers of trustee, including the power to assert the privilege with respect to confidential communications between a predecessor trustee and an attorney on matters of trust administration.

The same conclusion flows from an examination of the trust instrument. As already mentioned, a trust instrument may limit a trustee's statutory powers. The instrument at issue here, however, makes clear that Moeller has assumed all of Sanwa's former powers as trustee. The trust instrument provides that, upon resignation, the resigning trustee "shall thereupon be discharged as trustee of this trust and shall have no further powers, discretions, rights, obligations, or duties with reference to the trust estate *and all such powers, discretions, rights, obligations and duties shall inure to and be binding upon such successor trustee*." (Italics added.) As discussed earlier, the privilege of a trustee to refuse to disclose confidential communications it has had with its attorney regarding trust administration is essential to effective administration of the trust and so certainly qualifies as a power

---

Code, § 951), and the definition of "person" does not include "office of trustee." (See Evid. Code, § 175.)

We do not, however, interpret Moeller's argument as Sanwa does. Rather, we understand Moeller to argue that the power to control the privilege belongs *to the current occupant of the office of trustee*, not to the office itself, so that the "client" for purposes of the attorney-client privilege is the current trustee. It is this interpretation of Moeller's argument that we address.

"with reference to the trust estate." Thus, according to the plain terms of the Moeller trust instrument, Moeller inherited from Sanwa the power to assert the attorney-client privilege as to communications involving trust administration when Moeller assumed the office of trustee.[3]

These legal principles are not the only support for our conclusion that the current trustee is generally the holder of the attorney-client privilege with respect to confidential communications between a predecessor trustee and an attorney concerning trust administration. The practical effect of such a rule on the day-to-day administration of trusts also encourages its adoption. A brief survey of the duties and powers of a trustee makes clear the necessity and desirability of such a rule.

A trustee's basic duties relate to management of the trust property. A trustee must preserve trust property and make it productive. (§§ 16006, 16007.) A trustee must also "enforce claims that are part of the trust property" (§ 16010) and "defend actions that may result in a loss to the trust." (§ 16011.) In discharging these duties, a trustee must use "reasonable care, skill, and caution" (§ 16040, subd. (a)) and "invest and manage trust assets as a prudent investor would . . . ." (§ 16047, subd. (a).) In brief, the trustee's fundamental duty is to use due care to protect the trust property.

The Probate Code confers powers on a trustee that enable effective discharge of this duty. A trustee has the power to "collect, hold, and retain trust property" (§ 16220); to buy and sell property for the trust (§ 16226); to manage trust property (§ 16227); to make investments on behalf of the trust (§ 16047, subd. (a)); to encumber trust property (§ 16228); to "borrow money for any trust purpose" (§ 16241); and to "prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." (§ 16249, subd. (a).) The trustee also has those powers necessary to act as a reasonable administrator of the trust and as a prudent investor. (§ 16200, subd. (c).) In short, the trustee has all the powers needed for effective transaction of business on behalf of the trust.

---

[3] It was suggested at oral argument that the trust, rather than the trustee, might be viewed as the holder of the attorney-client privilege. Such a rule might lead to the same result as the rule adopted here. The former rule could not, however, be reconciled with the Evidence Code and the relevant principles of trust law. The "client," for purposes of the attorney-client privilege, must be a person, either natural or artificial (Evid. Code, § 951), and a trust is not a person but rather "a fiduciary *relationship* with respect to property." (Rest.2d Trusts, § 2, p. 6, italics added; *Hobbs* v. *Buck* (1981) 115 Cal.App.3d 176, 180 [171 Cal.Rptr. 258].) Indeed, " ' "an ordinary express trust is not an entity separate from its trustees." ' " (*Pillsbury* v. *Karmgard* (1994) 22 Cal.App.4th 743, 753 [27 Cal.Rptr.2d 491].) For that reason, the trustee, rather than the trust, is the real party in interest in litigation involving trust property. (*Ibid.*; see Code Civ. Proc., § 369, subd. (a)(2).)

In recognition of a trustee's need for professional advice, including legal advice, in order effectively to discharge these duties and exercise these powers, the trustee may "hire persons, including . . . attorneys . . . to advise or assist the trustee in the performance of administrative duties." (§ 16247.) As discussed earlier, this power to hire an attorney allows a trustee to become an attorney's client and to assert the attorney-client privilege with respect to confidential communications. It is likely, then, that in performing their day-to-day duties, trustees regularly have confidential communications with their attorneys about trust business (e.g., potential acquisitions and dispositions of property, lawsuits involving trust property). At any given time, therefore, many privileged communications that involve pending trust transactions are in existence.[4] To allow for effective continuous administration of a trust, the right of access to these communications and the privilege to prevent their disclosure must belong to the person presently acting as trustee, because that person has the duty to conduct all pending trust business. Therefore, for a trust to continue to operate smoothly when a change in trustee occurs, the power to assert the attorney-client privilege must pass from the predecessor trustee to the successor.

Sanwa and its supporting amicus curiae California Bankers Association express concern that the adoption of such a rule will hamper effective trust administration by frustrating the policy underlying the attorney-client privilege. Relying on our recent opinions in *People* v. *Gionis* (1995) 9 Cal.4th 1196 [40 Cal.Rptr.2d 456, 892 P.2d 1199] and *Roberts* v. *City of Palmdale, supra,* 5 Cal.4th 363, Sanwa correctly observes the attorney-client privilege is designed to foster candor between attorney and client so that the former can give the latter the best legal advice under the circumstances. Sanwa and its supporting amicus curiae contend that, unless a predecessor trustee retains the privilege even after it resigns as trustee, communications between the trustee and attorney will not be frank and, consequently, the attorney's advice will be inadequate, to the detriment of both trustees and beneficiaries.

We recognize that, under the rule we adopt, a trustee must take into account the possibility that its confidential communications with an attorney about trust administration may someday be disclosed to a successor trustee. This is, however, not unfair in light of the nature of a trust and the trustee's duties. ▇ A trust is a fiduciary relationship with respect to property in which the person holding legal title to the property—the trustee—has an equitable obligation to manage the property *for the benefit of another*—the

---

[4]The previous two statements seem quite reasonable in light of amicus curiae California Bankers Association's report that "[a]ccording to statistics from the State Banking Department's 86th Annual Report (1995), California banks and trust companies actively manage over *$430 billion* in fiduciary assets."

beneficiary. (*Estate of Shaw* (1926) 198 Cal. 352, 360 [246 P. 48]; *Askew v. Reserve Funding, Ltd.* (1979) 94 Cal.App.3d 402, 407 [156 Cal.Rptr. 208]; Rest.2d Trusts, § 2.) A trustee must always act *solely* in the beneficiaries' interest. (§ 16002, subd. (a); *Estate of Feraud* (1979) 92 Cal.App.3d 717, 723 [154 Cal.Rptr. 889].) If the trustee violates *any* duty owed to the beneficiaries, the trustee is liable for breach of trust. (§ 16400.) And professional trustees like Sanwa are held to a higher standard of care in discharging their legal duties than are others. (*Coberly v. Superior Court* (1965) 231 Cal.App.2d 685, 689 [42 Cal.Rptr. 64].) In a trust relationship, then, the benefits belong to the beneficiaries and the burdens to the trustee. The office of trustee is thus by nature an onerous one, and the proper discharge of its duties necessitates great circumspection. Liability to beneficiaries for mismanagement of trust assets is merely one of the burdens professional trustees take on—for, presumably, an appropriate fee.

█ Most importantly, the successor trustee inherits the power to assert the privilege only as to those confidential communications that occurred when the predecessor, *in its fiduciary capacity*, sought the attorney's advice *for guidance in administering the trust*. If a predecessor trustee seeks legal advice in its personal capacity out of a genuine concern for possible future charges of breach of fiduciary duty, the predecessor may be able to avoid disclosing the advice to a successor trustee by hiring a separate lawyer and paying for the advice out of its personal funds. (See *Talbot v. Marshfield* (1865 Ch.) 62 Eng.Rep. 728, 729;[5] 2A Scott on Trusts (4th ed. 1987) § 173, pp. 465-466 [noting, in the context of a beneficiary's effort to obtain

---

[5]In *Talbot v. Marshfield, supra,* 62 Eng.Rep. 728, the residual legatees of a testamentary trust sought to compel the trustees to produce two opinions of counsel. Although *Talbot* was a dispute over privileged information between beneficiaries and trustees, a subject we do not here address, the opinion nicely articulates the distinction between a trustee consulting an attorney as trustee to further the beneficiaries' interests, and a trustee consulting an attorney in his personal capacity to defend against a claim by the beneficiaries:

"The first . . . opinion [of counsel], the production of which is sought, [was] respectively stated and taken by the [trustees] to guide them in the exercise of a power delegated to them by the trusts of the will, and which, if exercised, would affect the interests of the other *cestuis que trust*. The opinion was taken before proceedings were commenced or threatened, and in relation to the trust. Under these circumstances it appears . . . that all the *cestuis que trust* have a right to see that . . . opinion. It was contended that it was not taken for the benefit of all the *cestuis que trust*; but all the *cestuis que trust* have an interest in the due administration of the trust, and in that sense it was for the benefit of all, as it was for the guidance of the trustees in their execution of their trust. Besides, if a trustee properly takes the opinion of counsel to guide him in the execution of the trust, he has a right to be paid the expense of so doing out of the trust estate; and that alone would give any *cestuis que trust* a right to see the . . . opinion.

"The other . . . opinion, however, stands on a totally different footing. This was not to guide the trustees in the execution of their trust; but, after proceedings had been commenced against them, they took advice to know in what position they stood, and how they should defend themselves in the suit. It appears . . . that the *cestuis que trust* have no right to see this

privileged information from a trustee, the distinction between legal advice sought for guidance in trust administration and legal advice sought for the trustee's own protection]; Bogert, The Law of Trusts and Trustees (2d rev. ed. 1983) § 961, p. 11 [same].)

We recognize that the distinction between these two types of confidential trustee-attorney communications—administrative, on the one hand, and defensive, on the other—may not always be clear. Yet to require a trustee to distinguish, scrupulously and painstakingly, his or her own interests from those of the beneficiaries is entirely consistent with the purpose of a trust. Moreover, a trustee can mitigate or avoid the problem by retaining and paying out of his or her own funds separate counsel for legal advice that is personal in nature. Finally, the question of who holds the privilege as to particular communications is ultimately decided by a neutral entity—the court. While a court "may not require disclosure of information claimed to be privileged . . . in order to rule on the claim of privilege . . ." (Evid. Code, § 915, subd. (a)), the statute is "not absolute" (*Cornish* v. *Superior Court* (1989) 209 Cal.App.3d 467, 480 [257 Cal.Rptr. 383]), in the sense that a litigant may still have to reveal some information in camera to permit the court to evaluate the basis for the claim. (*Cornish* v. *Superior Court*, *supra*, 209 Cal.App.3d at p. 480; *In re Lifschutz* (1970) 2 Cal.3d 415, 437, fn. 23 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].)

In any event, the instant case does not appear to be one in which Sanwa's fiduciary and personal capacities do overlap. The papers Moeller demands from Sanwa (e.g., agreements, billings, invoices) all seem to involve only matters pertaining to Sanwa's use of professional services in carrying out its administrative duties in managing the Moeller trust—specifically, handling the cleanup of the Los Angeles property and its related litigation. Nothing in the record suggests Sanwa obtained any of those services in defense of actual or anticipated charges against it of misconduct by the beneficiaries of the Moeller trust. Indeed, Sanwa has never made such a claim at any time during this litigation. Moreover, in its final accounting, which is the subject matter underlying the instant dispute, Sanwa has requested reimbursement of certain attorney's fees. "A trustee cannot compel the trust to pay his attorney's fees *unless the services so employed were incurred in the management and preservation of the trust estate.*" (*Estate of Vokal* (1953) 121 Cal.App.2d 252, 260 [263 P.2d 64], italics added.) Presumably, then, any privileged legal advice contained in the papers Moeller demands was sought by Sanwa in its fiduciary capacity, not in its personal capacity.

. . . opinion, unless they can make out that the trustees can charge the expense thereof on the trust funds. As to this there is no proof; the trustees may themselves have to bear the expense of this . . . opinion, as having been stated and taken by them as litigant parties with the *cestuis que trust.*" (62 Eng.Rep. at p. 729.)

The rule we adopt will, therefore, not have the disastrous consequences Sanwa and its supporting amicus curiae foretell. In contrast, the rule Sanwa proposes—that the attorney-client privilege is personal to the trustee, so that whichever person is the trustee when the confidential communication occurs retains the privilege as long as that person exists—would go far to prevent smooth transitions from one trustee to the next, would disrupt orderly administration of trusts, and would be detrimental to the interests of beneficiaries. The unworkability of Sanwa's rule is apparent when one considers its application to the following situation.

Suppose plaintiff slips and falls and sustains injuries on land which is part of the corpus of "MegaTrust." Plaintiff then sues A, the trustee of Mega-Trust, and A hires an attorney to defend the action. While the action is pending, B succeeds A as trustee, and A transfers the case file to B. Under Sanwa's rule, at the time of the transfer A was the holder of the attorney-client privilege with respect to any confidential communications contained in the case file. Because the holder of an evidentiary privilege waives it by voluntarily disclosing the privileged communication to a third party (Evid. Code, § 912, subd. (a); *Coldwell* v. *Board of Public Works* (1921) 187 Cal. 510, 522 [202 P. 879]; *Title Ins. etc. Co.* v. *California Dev. Co.* (1915) 171 Cal. 173, 220 [152 P. 542]), the transfer of the case file from A to B would constitute a waiver of the attorney-client privilege. Plaintiff would then be entitled to discover the confidential communications—a result obviously undesirable to the MegaTrust beneficiaries. Alternatively, if Sanwa's rule were the law, A may refuse to surrender the case file to B in order to preserve the privilege and prevent plaintiff from discovering the confidential communications. B would then have to retain another attorney to defend the action, and that attorney would have to duplicate, at the expense of Mega-Trust, all the work A's attorney had done previously—another result obviously undesirable to the MegaTrust beneficiaries.

As consideration of this hypothetical situation illustrates, adoption of Sanwa's proposed rule would have seriously adverse consequences to effective trust administration by the successor trustee. Moreover, although its adoption would relieve trustees of having to distinguish between their fiduciary and personal capacities when they seek legal advice about trust administration, adoption of Sanwa's proposed rule ultimately would harm beneficiaries, as pointed out in the hypothetical situation. As discussed earlier, however, a private express trust exists for the beneficiaries' benefit, not for the trustee's. We therefore conclude we should reject Sanwa's proposed rule as the law of this state.

Similar practical considerations have led other courts to conclude the power to assert the attorney-client privilege passes from a predecessor

officer to a successor in the analogous context of corporate affairs. These decisions include *Commodity Futures Trading Comm'n* v. *Weintraub* (1985) 471 U.S. 343 [105 S.Ct. 1986, 85 L.Ed.2d 372] (hereafter *Weintraub*), and *Tekni-Plex, Inc.* v. *Meyner and Landis* (1996) 89 N.Y.2d 123 [651 N.Y.S.2d 954, 674 N.E.2d 663] (hereafter *Tekni-Plex*). The reasoning of these cases is instructive, albeit by analogy.

In *Weintraub, supra*, 471 U.S. 343, the Supreme Court of the United States considered "whether the trustee of a corporation in bankruptcy has the power to waive the debtor corporation's attorney-client privilege with respect to communications that took place before the filing of the petition in bankruptcy." (471 U.S. at p. 345 [105 S.Ct. at p. 1989].) Before deciding this precise issue, the high court pointed out that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." (*Id.* at p. 349 [105 S.Ct. at p. 1991].) Accordingly, a former manager could not assert the privilege in opposition to the current manager, even with respect to statements the former made to an attorney regarding matters within the scope of corporate duties. (*Ibid.*)

The high court then went on to apply these general principles to the context of a corporation in bankruptcy. The high court concluded the trustee in bankruptcy controlled the corporation's attorney-client privilege while the corporation was in bankruptcy, because the trustee was the actor whose duties and powers most closely paralleled those of the corporation's management, which controlled the privilege outside bankruptcy. (*Weinbtraub, supra*, 471 U.S. at pp. 351-354 [105 S.Ct. at pp. 1992-1994].) In reaching this conclusion, the high court found important the bankruptcy trustee's statutory duty to investigate the conduct of the prior management in order to discover and then pursue claims against managing officers. (*Id.* at p. 353 [105 S.Ct. at p. 1993].) Said the court, "It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files. To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets." (*Ibid.*) The high court found this result impermissible, because it would lead to frustration of the goal of the Bankruptcy Code to discover insider fraud. (*Ibid.*)

Like concerns are present in the case of a trustee of a private express trust. A successor trustee is liable to the beneficiaries for a predecessor trustee's breach of trust if the successor unreasonably allows the breach to continue or does not take reasonable steps to redress it. (§ 16403, subd. (b)(1), (3).) The

Probate Code thus imposes a duty on a successor trustee, on pain of personal liability for neglect, to make reasonable inquiry into the predecessor trustee's administration of the trust and remedy any breaches, in order thereby to preserve the trust estate for the benefit of the beneficiaries.[6] To make this inquiry, the successor trustee must have access to the trust's legal files. Indeed, if the predecessor trustee were allowed to block the successor's access to those files, the successor trustee could be seriously hampered in the discharge of this duty, and the trust estate could thereby be irreparably damaged, to the detriment of the beneficiaries. Therefore, vesting the attorney-client privilege in the current trustee best comports with the terms of the Probate Code and with its underlying policy that trustees always are to act in the best interests of the beneficiaries. (See § 16002, subd. (a).)

In line with *Weintraub, supra*, 471 U.S. 343, is the decision of the New York Court of Appeals in *Tekni-Plex, supra*, 674 N.E.2d 663. There, in a dispute over corporate acquisition, one of the issues was whether the seller company or the buyer company held the attorney-client privilege with respect to preacquisition confidential communications between the seller company and its attorney. (674 N.E.2d at p. 665.) Relying on *Weintraub*, the New York Court of Appeals held that "where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations. It follows that, under such circumstances, the prior attorney-client relationship continues with the newly formed entity." (*Id.* at p. 668.) Accordingly, because the buyer continued the business of the seller, control of the attorney-client privilege regarding confidential communications about pre-acquisition business operations—which, incidentally, included compliance with environmental regulations—passed to the buyer. (*Id.* at p. 670.) The court noted this result comported with the buyer's right to invoke the seller's attorney-client relationship if it had to litigate over the rights and obligations it assumed from the seller. (*Ibid.*)

The similarities between *Tekni-Plex, supra*, 674 N.E.2d 663, and the instant case are striking. Moeller has succeeded Sanwa as trustee of the Moeller trust and is continuing its administration under the same terms under which Sanwa managed it. Moeller thus stands in Sanwa's shoes and controls the attorney-client privilege with respect to confidential communications

---

[6]The Moeller trust instrument contains the following exculpatory clause: "The successor trustee shall not be responsible for the acts of the former trustee, and *shall not be required* to examine the transactions of the former trustee which have taken place prior to the acceptance of his or her duties as successor trustee." (Italics added.) Although Moeller was thus not obligated to investigate Sanwa's management of the trust, the clause certainly does not prevent him from doing so in an effective manner.

Sanwa had with its attorneys on behalf of the trust. Moeller must also continue the cleanup of the Los Angeles property and make sure the property is in compliance with environmental laws. He therefore needs access to communications Sanwa had with its attorneys concerning the cleanup and related litigation. Finally, Moeller has a duty to litigate to protect the trust property because he assumed Sanwa's duties as trustee. Under these circumstances, the power to assert the attorney-client privilege with respect to confidential communications Sanwa had with its attorneys on matters of administration of the Moeller trust must pass to Moeller.

In summary, we conclude the power to assert the attorney-client privilege with respect to confidential communications a predecessor trustee has had with its attorney on matters concerning trust administration passes from the predecessor trustee to its successor upon the successor's assumption of the office of trustee. Sanwa therefore has no privilege to assert in opposition to Moeller's demand for production and inspection of documents. Accordingly, the Court of Appeal properly issued the writ of mandate to compel the trial court to order disclosure.

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., and Kennard, J., concurred.

**CHIN, J.**—I respectfully dissent.

The majority opinion departs from this court's consistent deference to the Legislature's prerogative in defining and controlling evidentiary privileges. The Evidence Code specifically states that "[t]he provisions of Division 8 (commencing with Section 900) relating to privileges shall govern any claim of privilege . . . ." (Evid. Code, § 12, subd. (c).) "Thus, the Legislature has codified, revised, or supplanted any privileges previously available at common law: the courts are no longer free to modify existing privileges or to create new privileges. [Citation.]" (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 540 [113 Cal.Rptr. 897, 522 P.2d 305].) As Justice Mosk stated for a unanimous court: "Our deference to the Legislature is particularly necessary when we are called upon to interpret the attorney-client privilege, because the Legislature has determined that evidentiary privileges shall be available only as defined by statute. (Evid. Code, § 911.)" (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496].) Except as required by constitutional law, the courts may neither add to the statutory privileges nor imply unwritten exceptions to them. (*Ibid.*)

The majority frames the question in this case as whether the attorney-client privilege enables a predecessor trustee to withhold from a successor trustee documents related to trust administration. (Maj. opn., *ante*, at p. 1129.) A trustee, whether a natural or juridical person, who consults a lawyer to secure legal service or advice in the lawyer's professional capacity is a "client." (Evid. Code, § 951.) The Legislature has given the client "a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." (Evid. Code, § 954.) With exceptions that are not relevant here (Evid. Code, § 953, subds. (b), (c), (d)), the person who controls the privilege is the client who confidentially communicated with the lawyer. Therefore, when a trustee consults a lawyer for legal advice, that person, not a successor trustee, controls disclosure of communications with the lawyer.

Nothing in these statutes suggests a trustee's privilege to withhold confidential attorney-client communications is an appendage of legal title to trust assets, an accessory to be stripped from the client who consulted the lawyer and passed along to the next person on the job. Instead, the plain import of the Legislature's conception is that the privilege is personal and remains with the person who consulted the attorney. The only circumstances the Evidence Code recognizes for transfer of the privilege are dealt with in the definition of "holder of the privilege" in Evidence Code section 953. Those circumstances are: (1) when the client legally cannot assert the privilege because a guardian or conservator has been appointed; (2) when the client is dead; and (3) in the case of certain juridical persons, when the client "is no longer in existence." (Evid. Code, § 953.) None of those circumstances applies to transfers of title to trust property to successor trustees. The Evidence Code has no provision that displaces the privilege, or designates another as its holder, simply because a new person took over the client's fiduciary duties.

The majority mistakes the matter as one that can be resolved by resort to the Probate Code and the trust instrument. The legislative design forecloses that approach, however, because the Evidence Code provisions "relating to privileges shall govern any claim of privilege . . . ." (Evid. Code, § 12, subd. (c).) Although a successor trustee may assume its predecessor's powers and duties with respect to the trust estate, that does not mean the successor also acquires the privilege the Evidence Code conferred on its predecessor. The predecessor holds the privilege because it was a person who sought legal advice or services from an attorney, not because it was a trustee with a question about trust administration.

The majority's view gains no validity by its reliance on the practical benefits that a successor trustee may obtain by invading its predecessor's

privileged communications. Necessity and desirability afford no basis for judicial revision of legislative dictates on who possesses the privilege. The Legislature already determined that the benefits of the privilege it codified outweigh the risk of unjust results. (*People* v. *Gionis* (1995) 9 Cal.4th 1196, 1207 [40 Cal.Rptr.2d 456, 892 P.2d 1199].) In this regard, we have described the attorney-client privilege as "essential to our system of justice," even though we recognized it can and does result in suppression of relevant information. (*Id.* at p. 1208.) Allowing necessity to be the basis for compromising privileged communications would be a step towards the privilege's ultimate abolition. (*Shannon* v. *Superior Court* (1990) 217 Cal.App.3d 986, 997-998 [266 Cal.Rptr. 242].)

Any reliance on necessity and desirability as a justification for this new rule may well be shortsighted. We do not know whether successor trustees, before now, had any difficulty in functioning adequately without commandeering their predecessors' privileged communications. We similarly do not know whether predecessor trustees, by asserting the attorney-client privilege, have evaded full accountability for mismanagement or breaches of trust. Whether such problems actually exist and, if they do, the appropriate solutions, are the types of questions best dealt with through the legislative process. In any event, the Legislature controls these matters. The code it enacted does not allow a successor trustee to usurp the attorney-client privilege granted to a predecessor trustee who sought legal counsel. If this is a gap in the law of privilege, it is not one that we are free to fill. Any change must come from the Legislature.

The majority too easily discounts the problems its rule will create for trustees. A privilege to withhold confidential communications has little utility when the parties to a communication cannot reliably anticipate whether it will in fact be privileged. The majority posits a distinction between those communications in which a trustee, "*in its fiduciary capacity*, sought the attorney's advice *for guidance in administering the trust*" and those in which a trustee "seeks legal advice in its personal capacity out of a genuine concern for possible future charges of breach of fiduciary duty . . . ." (Maj. opn., *ante*, at p. 1134, original italics.) The majority makes the former available to successor trustees, while the latter would still have some chance of remaining confidential.

That distinction is illusory and will not allow predictable implementation as a practical matter. It is the trustee's fiduciary capacity that imposes on the trustee potential personal liability for any breach of trust. Aside from the context of this case, where counsel conducted litigation on behalf of the trustee, one obvious reason for a trustee to consult counsel on trust administration is to avoid breaches of trust and the concomitant personal liability.

How are trustees and counsel to know when they have crossed the line and exposed their confidential communications to potentially hostile successors? Trial courts too will have little guidance in ruling on these privilege claims. However, notwithstanding Evidence Code section 915's prohibition, the majority apparently will allow trial courts to require disclosure in camera of as much information as deemed necessary to permit a decision. (Maj. opn., *ante*, at p. 1135.) This latitude will not reassure trustees who need to discuss difficult trust problems candidly and in confidence with counsel.

The majority offers only one clear basis for discerning truly privileged communications from those only conditionally privileged: Who paid the attorney's bill, the trust or the trustee? As a result, professional trustees can be expected to employ "shadow counsel" for consultation on any trust matters with potentially sensitive implications. In the majority's terms, this too will be "merely one of the burdens professional trustees take on—for, presumably, an appropriate fee." (Maj. opn., *ante*, at p. 1134.) Unfortunately, increased trustee fees are the most likely consequence of the majority's innovations in the Legislature's domain.

Baxter, J., and Brown, J., concurred.