Chief Justice DURRANT,
concurring in part, dissenting in part:
1 57 I concur in the majority's holding that a trust may be an attorney's client and that a trustee is entitled to assert privilege on behalf of the trust-client, but I respectfully dissent as to the rest of the opinion. I believe the majority has not properly framed the issue before it, which has led to confusing results. Properly framed, the issue before the court in this petition for extraordinary writ is whether the district court abused its discretion when it ordered that (1) SCM hand over confidential information protected by attorney-client privilege to the special fiduciary and that (2) SCM stop representing clients in litigation against the reformed trust. The majority instead focuses on a different action taken by the district court years earlier-its modification of the trust. The majority's argument that the district court transformed the UEP Trust into an entirely different entity really amounts, in substance, to an argument that the court should have terminated the trust rather than modify it and that, as a result, the court abused its discretion years later when it entered the orders at issue here. The majority reaches this conclusion despite the fact that the trust's modification was not appealed and *1072 despite the fact that we declined to reach whether the modification was appropriate in Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg.[1] In that case, we declined to address the propriety of the trust's modification because the claims were brought too late and after too many parties had relied to their detriment on the modification.[2] Because the modification stands, I would hold that the district court did not abuse its discretion when it assumed that its unchallenged modification of the trust was valid, disqualified SCM accordingly, and ordered SCM to provide privileged information to the trust.
STANDARD OF REVIEW
1 58 SCM has filed a petition for extraordinary writ under rule 65B(d) of the Utah Rules of Civil Procedure, alleging that the district court either abused its discretion or exceeded its jurisdiction when it disqualified SCM as attorneys in matters adverse to the trust and compelled SCM to disclose to the trust attorney-client communications between SCM and the suspended trustees regarding trust administration. Petitioners may seek relief under rule 65B "[where no other plain, speedy and adequate remedy is available.[3] Importantly, rule 65B provides that "relief may be granted ... where an inferior court ... abused its discretion.[4] This means that even if we find that the district court abused its discretion, we may opt not to grant relief[5] And especially in matters of disqualification, we grant the district court "considerable latitude" because "the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict."[6] When deciding to grant relief after an abuse of discretion has been found, we "will consider multiple factors, including the egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity of the consequences occasioned by the alleged error, and any additional factors that may be regarded as important to the case's outcome.[7]
ANALYSIS
1 59 I would hold that the district court did not abuse its discretion when it (I) ordered SCM to disclose to the special fiduciary communications protected by the attorney-client privilege and (I1) disqualified SCM from representing clients with interests adverse to the modified trust. I reach these conclusions largely because the district court's order modifying the trust was never appealed and was not reversed, even after we were asked to do so in a petition for extraordinary writ. I address each of the orders below.
I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT ORDERED SCM TO DISCLOSE PRIVILEGED COMMUNICATIONS
160 To determine whether the district court abused its discretion in ordering SCM to disclose confidential attorney-client communications to the special fiduciary, we must decide whether the special fiduciary is entitled to claim the attorney-client privilege on behalf of the trust, and whether the special fiduciary is still entitled to claim the privilege after the district court modified the trust using the cy pres doctrine. Because the majority correctly concludes that the trust was the client, I would hold that the special fiduciary was entitled to claim the privilege on behalf of the trust before the trust was modified, and that the special fiduciary is still entitled to assert that privilege even though the trust has been modified.
A. Before the Trust Was Modified, the Special Fiduciary Was Entitled to Claim the Attorney-Client Privilege on Behalf of the Trust
161 Upon appointment by the district court, the special fiduciary had the power to *1073 claim attorney-client privilege on the trust's behalf. Rule 504 allows persons other than trustees to assert privileges on behalf of a trust-client: "The privilege may be claimed by ... (1) the client; (2) the client's guardian or conservator; (8) the personal representative of a client who is deceased; (4) the successor, trustee, or similar representative of a client that was a corporation, association, or other orgamization, whether or not in existence; and (5) the lawyer on behalf of the client."[8] The question then is whether for the purposes of rule 504, the special fiduciary is a "successor" or "similar representative" so that he may claim privilege on the trust's behalf. I would hold that he is.
'I 62 When the district court suspended the acting trustees, a vacancy in trusteeship occurred. Pursuant to its authority under seetion 75-7-704, the district court then appointed a special fiduciary "for the administration of the trust."[9] Importantly, these acts took place before the trust's modification. Mr. Parker (of SCM) had just been fired by the trustees, who had decided not to defend the trust in lawsuits. This decision left the trust vulnerable to default judgments. Mr. Parker petitioned the district court to notify the Utah Attorney General before a default judgment was entered so that the Attorney General might intervene on behalf of the trust's charitable beneficiaries. The Utah Attorney General did intervene, and after the trustees failed to respond, the district court suspended them and appointed the special fiduciary. While the majority takes issue with the district court's modification of the trust, it is undisputed that suspending nonresponsive trustees charged with breaching their fiduciary duties and appointing an interim special fiduciary to manage trust affairs until new trustees could be appointed was within the district court's power and was not an abuse of its discretion. Thus, even under the majority's reasoning, the special fiduciary was properly charged with managing the trust before its modification and therefore took the place of or succeeded the properly suspended trustees. >
[63 And the special fiduciary was a "successor" or a "similar representative" to a trustee in every way relevant to the purposes of the attorney-client privilege where the trust is the client. For example, before modification, the special fiduciary was charged with administering the trust. This charge included protecting trust assets by defending the trust against the pending lawsuits. In addition, the charge included conducting trust business such as fulfilling any contracts entered into by the former trustees. As the California Supreme Court stated in Moeller v. Superior Court, "[tlo allow for effective continuous administration of a trust, the right of access to [attorney-client] communications and the privilege to prevent their disclosure must belong to the person presently acting as trustee, because that person has the duty to conduct all pending trust business." [10] Before modification, the special fiduciary, like the trustee in Moeller, was the person who had "the duty to conduct all pending trust business." Because access to attorney-client communications and the privilege to prevent their disclosure are vital to conducting trust business and managing the trust's legal affairs, the special fiduciary, being a "similar representative" and "successor" to the previous trustees is entitled to claim the attorney-client privilege on behalf of the trust under rule 504(c).
B. The Special Fiduciary is Entitled to Claim the Attorney-Client Privilege on Behalf of the Trust Even Though the Court Modified the Trust
T 64 I would hold that the special fiduciary is entitled to claim the attorney-client privilege on behalf of the trust even though the trust has been modified. Thus, I conclude that the majority errs in three important ways. First, instead of accepting that the trust's purpose was modified-erroneously or not-in an attempt to effectuate the settlor's legitimate and legal charitable purposes, the majority, without foundation in fact, asserts that a terminated trust's assets were purchased by a reformed trust. But this asset- *1074 purchase metaphor does not account for the legal and practical ramifications arising from the fact that, in reality, the trust was modified, not terminated. Second, although the majority rejects the special fiduciary's assertion of the attorney-client privilege, the majority fails to explain who holds the privilege on behalf of the old trust. Third, even assuming the majority's legal fiction that, for purposes of the attorney-client privilege, the trust, in effect, terminated and a new trust bought its assets, the special fiduciary, under rule 504, was still the last to manage the old trust and has the best claim to assert the privilege on behalf of the hypothetically nonexistent trust.
65 To begin, I believe the majority errs by creating an inapt legal fiction when it holds that "for purposes of the attorney client privilege, the assets of the original Trust are deemed to have been purchased by the Reformed Trust." [11] This holding has no basis in Utah law and does not describe what happened here. As the district court stated in its order, the plain language of Utah Code section 75-7-418 authorizes a court, under certain conditions, to "apply cy pres to modify or terminate [a] trust." [12] Here, the district court elected to modify (and not terminate) the trust in an effort to effectuate the settlor's original and legitimate charitable purposes. Thus, even after modification, the reformed trust remains an instrument to "provide for [FLDS] Church members according to their [just] wants and their needs." The district court modified the trust in October 2006. Its decision was not appealed. Further, when the modification was eventually challenged years later in a petition for extraordinary writ, we held that the challenge was barred by laches.[13] Thus, the district court's order modifying the trust stands and the present legal reality is that there now exists a single trust whose purpose has been modified, not two separate trusts, one of which purchased the assets of the other.
166 Because the trust was modified and not terminated, it continues to function in ways relevant to the attorney-client privilege. For example, the modified trust has the same liabilities, the same fiduciary obligations to beneficiaries, the same contractual obligations and rights, and the same assets as the old trust. In addition, the beneficiaries are largely the same, and the special fiduciary owes these charitable beneficiaries fiduciary obligations much as the now-suspended trustees did. In fact, the special fiduciary has the responsibility of defending the trust against any claims that the previous trustees breached their fiduciary duties.[14] Before modification, the special fiduciary did exactly that.
T 67 The special fiduciary's continuing duty to defend the trust against litigation, makes the majority's asset-purchase metaphor particularly inapt. If an interested party sues the reformed trust for actions that constitute a breach of fiduciary duty by the previous trustees before modification, the special fidu-clary is obligated to defend against those claims to protect trust assets. And this is not merely hypothetical-the previous trustees' breaches of fiduciary duty were the very reason for the special fiduciary's appointment. If the majority's asset-purchase legal fiction were reality, there could be no cause of action against the new trust for the previous trustees' breaches of duty because the old trust would have terminated and the new, unrelated trust would owe no duties to the old beneficiaries. But since the legal reality is that the trust was modified, and the majority creates the asset-purchase metaphor only for the limited purpose of defining privilege, the reformed trust is still legally responsible for the actions of its predecessors and can have its assets seized to remedy any fiduciary duties they breached.
*1075 T 68 In addition, since the beneficiaries of the modified trust are largely the same-that is, FLDS Church members-legal actions against the trust that deplete trust assets injure the same people before and after modification. The mere fact that the class of beneficiaries has been slightly expanded to include people who had previously donated to the trust, regardless of their religious views, does not change the fact that the vast majority of trust beneficiaries are still faithful FLDS members. When the trust loses assets in legal battles, these assets will no longer benefit the FLDS community. So it is not as though some new, unrelated entity purchased the assets, because fiduciary duties are still owed to the FLDS members.
T69 Because successor trustees are responsible for their predecessors' actions and owe beneficiaries the same fiduciary obligations, the California Supreme Court has held that the power to assert attorney-client privilege should follow the office of trustee:
To allow for effective continuous administration of a trust, the right of access to [privileged] communications and the privilege to prevent their disclosure must belong to the person presently acting as trustee, because that person has the duty to conduct all pending trust business. Therefore, for a trust to continue to operate smoothly when a change in trustee occurs, the power to assert the attorney client privilege must pass from the predecessor trustee to the successor.[15]
Allowing the trust modification to stand, but handicapping the special fiduciary in his efforts to defend the trust by denying him access to privileged communications through an asset-purchase legal fiction, is the worst of all possible worlds-one in which only the beneficiaries lose.
{70 Nonetheless, the majority uses the asset-purchase metaphor to find not only that SCM is not required to disgorge the privileged communications, but that SCM is actually prohibited from disclosing this information under rule 1.9 of the Utah Rules of Professional Conduct. The majority takes this position even though it "can imagine some cireumstances where privileged attorney-client communication may facilitate the administration of the Reformed Trust." [16] Because the modified trust is legally responsible for the suspended trustees' actions, however, it makes no sense to deny the modified trust access to those trustees' attorney-client communications on behalf of the trust. Thus, the majority's asset purchase legal fiction for attorney-client purposes is unworkable because it fails to appreciate the modified trust's responsibilities and labilities.
171 The majority's asset-purchase metaphor is also unworkable because it spawns confusion about who represents the old trust's interests. For example, in concluding that the old trust cannot disgorge privileged information, the majority reasons that to hold otherwise "would require the [old trust] to turn over possibly embarrassing or legally damaging material to [the new trust,] an entity it perceives as hostile to the FLDS Church and thus hostile to the very purpose of the [old trust]." [17] But because the majority contends that the old trust, in effect, terminated, it is unclear how this hypothetically nonexistent trust perceives the so-called new trust as "hostile." It is also unclear whose statements the majority relies upon to come to this conclusion and whether those individuals are qualified to represent the old trust's interests. In reaching its decision, is the majority relying upon statements by the FLDS Church, beneficiaries of the old trust, the now-suspended trustees, beneficiaries of the new trust, the petitioners in this action, or SCM itself? Also, are any of those entities qualified to represent the old trust's interests? Without these answers, the majority's legal fiction is ultimately unworkable and confusing.
172 Instead of creating a legal fiction to deal with a trust modification the majority feels was incorrect, but which we have allowed to stand, I would hold that the propriety of modification is not before us and focus on the presently existing legal reality: the *1076 trust was modified. Because the trust was modified, and not terminated, it continues to function in ways relevant to the attorney client privilege.
73 Further, even accepting the majority's fictional construct that the trust, in effect, terminated for purposes of the attorney-client privilege, the majority does not identify who holds the privilege now and who is in the best position to assert the privilege on the trust's behalf. Instead, the majority appears to conclude that it is SCM itself who holds the privilege. But the attorney-client privilege belongs to the client and cannot be held in a vacuum.[18] Because the privilege belongs to the client, the client must direct the attorney when to assert or waive that privilege. Indeed, the attorney may only assert the privilege "on behalf of the client." [19] Thus, for SCM to successfully assert the privilege, it must be acting for an entity that has some basis for claiming to hold the privilege on behalf of the old trust. Here, SCM has failed to point to any client or entity that makes such a claim. For example, SCM cannot purport to act on behalf of the former trustees because the majority correctly recognizes that the trust, and not the trustees, holds the privilege. In addition, the privilege can hardly be said to have passed from the trust to the former trustees because they were suspended before modification for breaching their fiduciary obligations. Further, SCM has offered no basis on which the court could conclude that SCM's new clients, the petitioners in this action, have any claim to hold the privilege on behalf of the old trust. Because the privilege belongs to the client, the majority must address who inherited the privilege upon the trust's modification or explain on whose behalf SCM asserts the privilege. The majority has failed to do either.
T 74 I would therefore hold that the modification has not altered who holds the attorney-client privilege: it is the trust, now as ever. In addition, the person who is entitled to claim this privilege, under rule 504, is the same person who was entitled to claim the privilege on the trust's behalf before modification: the special fiduciary.
T 75 Even accepting the legal fiction of the majority, where the old trust, in effect, terminated and a new trust acquired its assets, the special fiduciary remains the best person to claim the old trust's attorney-client privilege. Rule 504 specifically anticipates situations where a client "corporation, association, or other organization" is no longer "in existence." [20] Even then, a "successor, trustee, or similar representative" can claim the privilege on behalf of the nonexistent organization-client.[21] The advisory committee's note indicates that "[where there is a dispute as to which of several persons has claims to the rights of a previously existing entity, the court will be required to determine from the facts which entity's claim is most consistent with the purposes of this rule." [22]
176 When the special fiduciary took over after the district court suspended the previous trustees for various breaches of duty, it took over the same trust SCM had represented; the trust that had not yet been modified. Therefore, at the very least, the special fiduciary became a "successor ... or similar representative of a[n] ... organization ... not in existence" and is entitled to assert privilege on behalf of the hypothetically nonexistent trust.[23] Because the special fiduciary held the privilege before modification, it is troubling that the majority does not explain who inherited that privilege after modification. Even if SCM were correct in stating that the trust it represented no long *1077 er exists, the last person responsible for the old trust's administration was the special fiduciary. He would have been the last person who needed both the information contained in attorney-client communications and the power to keep that information privileged in order to protect the beneficiaries' interests. Therefore, the special fiduciary's claim is better than anyone else's claim, including that of the suspended trustees or the petitioners.
T 77 Further, even as modified, the special fiduciary still controls the trust's property and still owes fiduciary obligations to the original trust's beneficiaries. Thus, even if the trust has been so unrecognizably altered that it can no longer be considered the same client SCM represented, the privilege is best claimed on the trust's behalf by the controller of whatever vestiges of the trust remain. That is because this person is the only person with any remaining duties to any beneficiaries, whom the trust, any lawyer representing the trust, and any communications between trust and lawyer were intended to benefit. Neither the suspended trustees nor the petitioners hold such duties. Thus, as between the suspended trustees, the petitioners, and the later-appointed special fiduciary, the special fiduciary's claim to assert the attorney-client privilege would be more consistent with rule 504.
178 In sum, I would hold that, whether the trust was properly modified or not, it was modified, and thus the majority's asset-purchase metaphor fails. First, the trust's modification has practical and legal ramifications for which the asset-purchase legal fiction does not properly account. For example, the trust's liabilities, contractual rights and obligations, rights to property, and fiduciary duties all continued through modification. Yet under the majority's reasoning, the privileges necessary to defend the trust and to assert these rights terminated. This is a position I cannot support. I would therefore hold that the reformed trust is the same trust as it was before modification, and that the special fiduciary, charged with administering the trust before and after modification, has the best claim to assert privilege on the trust's behalf. Second, in using the asset-purchase legal fiction to reject the special fiduciary's claim, the majority fails to explain who now holds the privilege on behalf of the old, hypothetically nonexistent trust. Thus, the majority fails to address how SCM can even assert the privilege. Third, even assuming the old trust terminated, as the last manager of the trust, the special fiduciary would be the best party to assert attorney-client privilege on the terminated trust's behalf.
T79 For these reasons, I believe that the majority errs when it holds that the district court abused its discretion in ordering disclosure of the privileged communications. To arrive at this conclusion, the majority reasons that Judge Lindberg abused her discretion in failing to conclude that her previous modification of the trust, which was not appealed or reversed by our recent decision in Lindberg, was incorrect. Then, the majority reasons that this earlier incorrect modification could only be remedied by creating a legal fiction, unprecedented in Utah law, that the modification was, in effect, a termination insofar as the narrow issue of privilege was concerned. The majority creates this legal fiction even though it could harm trust beneficiaries and even though it does not account for who is entitled to assert privilege on the terminated trust's behalf. This is too slender a reed upon which to rest a holding of abuse of discretion. I would thus hold that the district court did not abuse its discretion when it ordered disclosure of privileged communications to the special fiduciary.
IL THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISQUALIFYING SCM
80 The majority holds that the district court abused its discretion when it disqualified SCM from representation adverse to the modified trust, reasoning that the modified trust was never SCM's client. I believe this is incorrect for the same reasons outlined above. Rule 1.9 of the Utah Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former *1078 client." [24] As discussed in Part I, supra, I would hold that the reformed trust is the same trust that SCM represented before the trust's modification. I would also hold that SCM is currently representing clients whose interests are adverse to the trust in matters substantially related to the matters in which SCM previously represented the trust.
The majority rests its holding that disqualification was inappropriate on its legal fiction that, for the purpose of attorney-client relationships, an incorrectly modified trust is no longer the same trust that existed before modification. I have addressed why I think this argument is incorrect in Part I, supra. But when the attorney who represents a trust switches sides and represents clients suing that trust in matters substantially related to his previous representation, the majority's legal fiction becomes even less workable.
T 82 The overlap of SCM's representation is extensive. But perhaps the most troubling aspect of SCM's previous representation of the trust is that SCM helped to restate the trust in 1998 after we held in Jeffs v. Stubbs that the 1942 version of the trust was not charitable and that beneficiaries, therefore, had standing to sue.[25] In that case, the trial court held that the trust was charitable, which had the effect of denying would-be beneficiaries standing to assert "breach of fiduciary duty, accounting, and distribution claims." [26] But we reversed, holding that the trust's settlors had structured the trust so that it would benefit specific individuals, and that these individuals therefore had standing.[27] Restating the trust so that it had no specific beneficiaries, but was instead "'devoted to the accomplishment of purposes beneficial to the community/" made the trust charitable and was one way to deny standing to those who, now incidentally rather than specifically, benefitted from the trust.[28] Indeed, SCM has, in previous litigation, made this argument on behalf of the trust. But now SCM represents beneficiaries suing the trust-even though SCM, during its representation of the trust, tried to immunize the trust against exactly these kinds of suits. When it issued the presently disputed disqualification order, the district court found that
it is abundantly clear that during the 17 years that [SCM] (and, in particular, Mr. Parker) represented the Trust, [SCM] advocated positions on matters "substantially factually related" to those presently at issue before this Court. Furthermore, the positions previously advocated by [SCM] on behalf of the Trust are directly contrary to their present arguments on behalf of the Movants. For example, [SCM] does not dispute that the 1998 Restatement drafted by Mr. Parker expressly provided that any donations to the Trust would be made "without any reservation or claim of right and/or ownership," and that "use of property owned by the [Trust] is not and does not become a right or claim of anyone who may benefit in any way from the Trust." [SCM], on behalf of the Trust, vigorously litigated this position in several cases.... Now ... [SCM] argues that the Movants [have rights] to use Trust land, and that such use invests them with "rights" to seek an injunction against the Fiduciary in order to prevent the sale of certain Trust land.
... [In light of the breadth of [SCM]'s prior representation of the Trust and the arguments it is now making against the Trust, the Court is persuaded that the substantiality requirement is satisfied in that there is "a factual nexus between [SCM]'s prior and current representations."
Since the legal reality of this case is that the trust has been modified, disqualifying SCM from representing clients with interests adverse to its former client in substantially related matters was not an abuse of the district court's discretion.
*1079 183 But even assuming, as the majority does, that the reformed trust is not the same trust that SCM represented, who SCM has represented is less than straightforward. Indeed, this case seems ripe with potential nascent conflicts. SCM represented a religious trust and helped restate it to avoid suits by beneficiaries; then, after being fired by trustees who did not want to defend the trust against lawsuits, petitioned the court to notify the Utah Attorney General so that the Attorney General could intervene and defend the trust anyway. After the Attorney General intervened and the court suspended the trustees, appointed a special fiduciary, and modified the trust, SCM has now returned to represent charitable beneficiaries against the trust that SCM drafted in 1998 and that was modified as a result of the petition SCM filed after being fired by the former trustees. Even if the reformed trust is not the old trust, this pattern of representation leaves questions about where SCM's loyalty lies: Is it with the old trust, the former trustees who fired SCM, charitable beneficiaries of the old trust who they evidently tried to protect by petitioning the court against the former trustees' wishes after their firing, or beneficiaries of the modified trust? Given these potential nascent conflicts and the wide latitude we grant district courts when deciding matters of disqualification,[29] I would hold that, even assuming the legal fiction that the modified trust is not the same trust SCM represented, the district court did not abuse its discretion in disqualifying SCM.
184 The sole argument SCM presents, apart from arguing that the modified trust is not the same client SCM represented, is that the special fiduciary waived any right to move for disqualification due to its failure to object to SCM's earlier representation of a party in a matter adverse to the trust. Although SCM filed a memorandum in opposition to the special fiduciary's motion to disqualify below, SCM never argued the waiver issue to the district court. It cannot be argued that the district court abused its dis-eretion in failing to consider a waiver argument it never had an opportunity to consider.
1 85 In sum, I would hold that the district court did not abuse its discretion when it disqualified SCM because SCM is representing parties with interests adverse to its former client, the trust, in matters substantially related to the matters in which SCM represented the trust. But even if the modified trust is not the same trust SCM represented, I believe the potential for nascent conflicts in this case warrants granting the district court wide discretion, which it did not abuse when it disqualified SCM.
CONCLUSION
[ 86 The reformed trust is the same trust SCM previously represented. As a result, the district court did not abuse its discretion when it disqualified SCM and ordered disclosure of privileged communications. But even under the court's legal fiction that the two trusts are distinct for the narrow purpose of deciding matters of attorney-client relations, I believe that the special fiduciary remains the best person to assert privileges on behalf of the hypothetically nonexistent trust and that this case is too full of potential nascent conflicts to hold that the district court's order was an abuse of discretion. I would therefore deny SCM's petition for extraordinary writ.

. 2010 UT 51, 238 P.3d 1054.

. Id. 935.

. Urau R. Civ. P. 65B(a).

. Id. 65B(d)(2) (emphasis added).

. State v. Laycock, 2009 UT 53, ¶ 8, 214 P.3d 104.

. State v. Maughan, 2008 UT 27, ¶ 20, 182 P.3d 903 (internal quotation marks omitted).

. Laycock, 2009 UT 53, 19, 214 P.3d 104 (internal quotation marks omitted).

. Urax R. Evip. 504(c) (emphasis added).

. Urax Cope § 75-7-704(5).

. 16 Cal.4th 1124, 69 Cal.Rptr.2d 317, 947 P.2d 279, 284 (1997) (emphasis added).

. Supra 148.

. Urag Cope § 75-7-413(1)(€C) (emphasis added).

. Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg, 2010 UT 51, ¶ 35, 238 P.3d 1054.

. When trustees breach duties, a court may impose liens and constructive trusts on trust property to remedy the breach. See Uram Cons § 75-7-1001(2)@). The special fiduciary, much like a trustee, is charged with protecting trust property. See id. § 75-7-807.

. Moeller, 69 Cal.Rptr.2d 317, 947 P.2d at 284.

. Supra \ 52.

. Supra 151.

. See Uran R. Evin. 504(b)(1) ("A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications ... made for the purposes of facilitating the rendition of professional legal services...." {emphasis added)).

. Id. 504(c)(5) (emphasis added).

. Id. 504(a)(1), (c)(4).

. Id. 504(c)(4).

. Id. 504 advisory committee note (emphasis added). Here, it is again worth noting that the special fiduciary is the only party claiming the trust's privilege. For instance, the suspended trustees have not attempted to assert that they have the best claims or any claims to the rights of the trust.

. Id. 504(c)(4).

. Urtax R. Pror's Conpuct 1.9(a).

. 970 P.2d 1234, 1253 (Utah 1998).

. Id. at 1251.

. Id. at 1251-53.

. See, eg., id. at 1252 (quoting Restatement (See onp) or Trusts § 364 cmt. a (1959)).

. State v. Maughan, 2008 UT 27, ¶ 20, 182 P.3d 903.