[No. B167817. Second Dist., Div. Six. Sept. 2, 2004.]

JACQUELINE D. EDDY, as Trustee, etc. Plaintiff and Respondent, v. WILLIAM E. FIELDS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

1544

---

COUNSEL

William E. Fields, in pro. per.; Lori A. Fields, King & Ferlauto and William T. King for Defendant and Appellant.

Voss & Associates, David C. Voss, Jr., James E. Walker III and Mana F. Bolourchi for Plaintiff and Respondent.

OPINION

**COFFEE, J.**—Appellant William E. Fields is an attorney who was retained by two trustees of an inter vivos trust. A successor trustee petitioned the probate court to set the amount of reasonable fees for appellant's services at zero and to obtain certain legal documents notwithstanding appellant's claim of work product privilege. The court granted the petition to set the fees at zero and ordered production of the documents. We modify the fee order, but otherwise affirm.

## FACTS AND PROCEDURAL HISTORY

Jack P. Eddy established a revocable inter vivos trust in 1987, naming himself as the initial trustee. Among the several beneficiaries were his daughter-in-law Doris L. Eddy, his sister Bernice J. Smith and his granddaughter Jacqueline D. Eddy. Doris[1] and Bernice were designated as successor cotrustees in the event of Jack's death. Jack died on November 2, 1996, when the trust was valued at over $3.6 million. Doris and Bernice were appointed as cotrustees and hired appellant and Attorney James Merzon to assist them in legal matters concerning the trust. The exact structure of this representation is unclear. It appears from the record that Merzon may have represented Bernice only, but that appellant represented both Doris and Bernice.

On July 30, 1999, Doris and Bernice filed a petition for approval of the first accounting, which covered the 26-month period from Jack's death until December 31, 1998. It included a request that the court approve attorney's fees of $20,912.50 for legal services provided by appellant in 1996 and 1997, along with fees of $28,578.00 paid to attorney Merzon from 1996 through 1998. The petition stated that the services "included but were not limited to the following: extensive tax research in connection with the court-ordered pre-death gifts distributed by Petitioners; preparation of the first account current in conjunction with Petitioners' CPA; preparation of this petition for settlement, filing account and petition, setting the petition for hearing and notifying the beneficiaries of the hearing on the account." Appellant's billing invoices for 1996 and 1997 were attached to the petition as exhibits. The entries from 1997 were fully itemized, but the invoice from 1996 lumped the time billed into broad categories and did not describe the nature of the individual tasks performed.

Jacqueline and two other beneficiaries filed objections to the petitions, claiming (1) the compensation sought by Doris and Bernice for their services

---

[1] We refer to some individuals by first name to avoid confusion.

as trustees (in excess of $250,000) was excessive; (2) some of the expenses claimed by Doris and Bernice were inappropriate; and (3) the attorney's fees were not properly documented and did not cover the full accounting period. A referee was appointed by the court to investigate the controversy.

In a report filed on February 29, 2000, the referee recommended reducing the compensation and expenses claimed by Doris and Bernice as trustees. Among other things, he concluded that although Doris and Bernice had produced income for the trust by "timing the market," they had employed an "unconventional and risky" methodology and had not adequately diversified its assets. The referee's report also noted several problems with the request for attorney compensation for appellant: "First, the fees paid to Mr. Fields do not cover the services rendered for the entire accounting period. . . . Although not actually paid during the accounting period, it is reasonable and customary for a fee request to cover the period of the accounting. For it not to do so is confusing and may mislead the Court. Mr. Fields should be required to present his fee request for the entire accounting period before fees are approved. [¶] . . . All fee requests should be in conformance with the San Luis Obispo County Superior Court Rules and should list sufficient detail as to the services rendered, the time expended, who performed the service and the amount requested as to each service. The detail provided by Mr. Fields as to calendar year 1997 was adequate. However, the detail Mr. Fields provided as to calendar year 1996 was inadequate. As indicated above, there was no information supplied by Mr. Fields for calendar year 1998." The report also noted that Attorney Merzon had not adequately documented the services he provided.

The superior court issued its order on first account on October 12, 2000. It adopted the referee's recommendation to reduce the compensation and expenses claimed by Doris and Bernice. It did not approve the attorney's fees requested on behalf of appellant or Merzon, but instead directed them to file within 30 days "declarations in accordance with the San Luis Obispo County Superior Court Rules for all attorney fees requested for the first accounting period and that a further hearing be held to consider the appropriateness of those fees." Appellant did not file a declaration within 30 days of the order. On November 29, 2000, after the 30-day period had elapsed, Doris and Bernice filed a notice of appeal challenging the order on first account.

An opening brief was filed in that appeal challenging the superior court's reduction of trustee compensation and its order directing appellant and Merzon to file an additional declaration concerning their attorney's fees. In mid-2001, while the appeal was still pending, another law firm replaced appellant and Merzon as counsel for Doris and Bernice. Before briefing was complete, Doris and Bernice reached a settlement with Jacqueline and the

other beneficiaries who had objected to the first accounting. The written settlement agreement was executed in October of 2001 and provided that Doris and Bernice would receive $20,000, would resign as trustees, and would not be required to return any money they had already received from the trust. The objecting beneficiaries released all claims against Doris and Bernice and their agents, but specifically excepted appellant, Merzon and a financial consultant hired by Doris and Bernice from the terms of the release.

Jacqueline succeeded Doris and Bernice as trustee. She requested that Attorney Merzon turn over his legal files, but Bernice, Doris and appellant advised him not to do so. Merzon filed a petition for instructions on July 1, 2002, seeking guidance as to whether the files should be released to Jacqueline. (Prob. Code, § 17200.)[2] Appellant filed objections to the petition, arguing that some of the documents in Merzon's files had been prepared by him (appellant) while representing the trustees and were protected by the work product privilege. Following extensive briefing and a hearing, the court decided to conduct an in camera review of the documents at issue.

On November 22, 2002, Jacqueline filed a document in her capacity as trustee entitled "Nunc Pro Tunc Petition for Approval of Compensation to Professional William Fields, Esq. for First Accounting Period and Petition for Approval of All Other Compensation." The petition requested that appellant's attorney's fees be set at zero, alleging that appellant had repeatedly refused to provide Jacqueline with itemized billing statements and had not complied with the court's order on the first accounting requiring him to submit itemized legal bills for 1996–1998. Appellant opposed the request on a number of grounds. A hearing was held at which time the court took the matter under submission along with the still-pending issue of the production of Attorney Merzon's legal files.

The trial court issued a written ruling on these submitted matters on April 9, 2003. It granted Jacqueline's petition to set appellant's fees at zero, stating that his "failure to comply with this Court's earlier rulings regarding confirmation of fees and the Local Rules of Court in this regard, in and of itself, is sufficient ground[] to grant the petition." As to the documents in Merzon's legal files, the court ruled that appellant had waived his claim of work product privilege by disclosing them to Merzon because Merzon was not appellant's cocounsel. Appellant filed a petition for reconsideration, which was formally denied on June 16, 2003.

---

[2] All statutory references are to the Probate Code unless otherwise stated.

## DISCUSSION

### [[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### *Work Product Privilege*

The trial court ordered Attorney Merzon to turn his complete legal files over to Jacqueline as successor trustee, notwithstanding appellant's claim that some of those documents contained appellant's attorney work product. Appellant contends the trial court erred when it ruled that he had waived the work product privilege by turning any such documents over to Merzon. He asks us to order the trial court to conduct an in camera inspection of the challenged documents to determine as to each whether the work product privilege applies. (See *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 215 [91 Cal.Rptr.2d 716, 990 P.2d 591].) We conclude no in camera hearing is necessary because the work product privilege has been waived, albeit not for the precise reason stated by the trial court.

The powers of a trustee "are not personal to any particular trustee but, rather, are inherent in the office of trustee." (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1131 [69 Cal.Rptr.2d 317, 947 P.2d 279].) A new trustee succeeds to all the rights, duties and responsibilities of his or her predecessors, including those related to dealings with an attorney retained to assist the trustee in the management of the trust. (*Ibid.*; see also *Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 528–529 [15 Cal.Rptr.3d 735, 93 P.3d 337] [successor trustee has standing to sue counsel retained by former trustee for malpractice in work performed for trust].) As the successor trustee, Jacqueline stood in the shoes of Doris and Bernice and was entitled to obtain the trust-related client papers and property in Merzon's possession to the same extent that Doris and Bernice would have been. (See *Moeller,* at p. 1131.)

In general, the documents within an attorney's legal file belong to the client. Rule 3-700(D) of the Rules of Professional Conduct provides that an attorney "whose employment has terminated shall: [¶] (1) Subject to any protective order or non-disclosure agreement, promptly release to the client, at the request of the client, all the client papers and property. 'Client papers and property' includes correspondences, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not[.]" Though this provision would appear to give Jacqueline an absolute

---

*See footnote, *ante,* page 1543.

right to access Merzon's file, because Bernice and possibly Doris were former clients of Merzon, appellant argues that this right is subject to the attorney work product privilege codified in Code of Civil Procedure section 2018, subdivision (c): "Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."

The statutory work product privilege and the client's right to his or her file pose an apparent conflict, one that has not been definitively resolved by the courts. (*Metro-Goldwyn-Mayer, Inc. v. Superior Court* (1994) 25 Cal.App.4th 242, 247 [30 Cal.Rptr.2d 371] (*MGM*).) One line of cases addressing an attorney's obligation to turn files over to the client or new counsel has stated summarily that an attorney's work product belongs to the client, although these authorities did not address the work product privilege per se. (*Ibid.*) Another line of cases holds that the attorney is the holder of the work product privilege for the purpose of adversarial discovery during litigation. (*Ibid.*) Documents within the scope of the privilege thus need not be disclosed, even to the client. (*Ibid.*; *Lasky, Haas, Cohler & Munter v. Superior Court* (1985) 172 Cal.App.3d 264, 269 [218 Cal.Rptr. 205].)[4]

■ It is unnecessary to resolve these arguably conflicting lines of authority. Assuming that appellant had an absolute privilege not to disclose his work product to his client, he has implicitly waived that privilege under the circumstances of this case. Appellant disclosed the allegedly privileged documents to Attorney Merzon in connection with Merzon's representation of Bernice and possibly Doris as trustees. In so doing, appellant effectively disclosed those documents to Bernice and Doris and waived the work product privilege with respect to these former trustees. (See *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 69 [131 Cal.Rptr.2d 777] [attorney-client relationship is one of agent and principal].) Because Jacqueline is a successor trustee, the privilege has been waived as to Jacqueline as well.

In *MGM, supra*, 25 Cal.App.4th at pages 247–249, the court held that an attorney who had formerly represented two adversaries waived the right to claim the work product privilege as to one side when the other side had access to the documents. It concluded: "Equity demands that either both parties should have the information or neither should." (*Id.* at p. 249.) While there may be some cases in which an attorney can successfully claim work product privilege as to a client, it is untenable for appellant to suggest that he

---

[4] Under Code of Civil Procedure section 2018, subdivision (f), the work product privilege does not apply to relevant documents in an action by a client for an attorney's breach of duty.

waived the work product privilege as to Merzon, but not to Merzon's clients, who were also his own clients. Equity demands waiver of the privilege under the circumstances.

 We emphasize that we reach this result because Merzon was an agent of one or more former trustees, and Jacqueline is a successor trustee. If an adversarial third party, rather than a client of Merzon's, had been seeking the documents, we would be hard pressed to say the privilege had been waived. A disclosure of work product to an attorney who represents a mutual client or a client with common interests does not necessarily operate as a waiver as to third parties. (See *Raytheon Co. v. Superior Court* (1989) 208 Cal.App.3d 683, 688 [256 Cal.Rptr. 425].)

## DISPOSITION

The judgment (ruling on submitted matters entered April 9, 2003) is modified to reflect confirmation of $14,420 in legal fees for services appellant rendered in 1997. As so modified, the judgment is affirmed.

The parties shall bear their own costs.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied September 21, 2004, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 1, 2004.