Filed 6/30/15  George v. Gandolfo Excavating, Inc. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **RAYMOND GEORGE,**  **Plaintiff and Appellant,**  v.  **GANDOLFO EXCAVATING, INC. et al.,**  **Defendants and Respondents.** | **A141249**  **(Alameda County Super. Ct. No. HG12628707)** |

This dispute arises out of the "brushing," or clearing, of a fence line on 25 acres of rural land on Mines Road in Livermore, California (the Property).  When Gandolfo Excavating, Inc., and John and Joe Gandolfo (collectively, Gandolfo) brushed the fence line, decedent Jerry Patterson's revocable trust held title to the Property.  Several months later, Patterson died and plaintiff Raymond George became successor trustee and inherited the Property.  George transferred title to the Property to his own trust.

George later sued John Tullis and Gandolfo (collectively, defendants) for, among other things, trespass, discomfort and annoyance as a result of trespass, and destruction of trees on the Property.  Defendants moved in limine to exclude evidence of George's damages, claiming George had "no standing" because Patterson owned the Property when the alleged damage occurred and he did not assign his claims to George.  The court granted defendants' motions in limine, and their motions for a nonsuit or directed verdict, and entered judgment for defendants.

1

George appeals. He contends the court erred by granting defendants' in limine and nonsuit motions. He claims he had "standing" to sue defendants for the damage to the Property on several grounds, including as a successor trustee. We agree and reverse. We conclude: (1) as successor trustee, George was the real party in interest with standing to sue defendants for damage to the Property; and (2) a factual dispute regarding whether George occupied the Property precluded the court from granting defendants' in limine motion on George's claim for discomfort and annoyance as a result of trespass.

FACTUAL AND PROCEDURAL BACKGROUND

George and Patterson were close friends. In 1999, George created the Raymond A. George Revocable Trust, naming himself as the trustee (George Trust). In 2006, Patterson created the Jerry R. Patterson Revocable Trust (Patterson Trust) naming himself as settlor and original trustee and George as successor trustee and sole beneficiary.[1] The Patterson Trust held title to the Property. Tullis owns land bordering the Property. Over several days in 2009, Gandolfo used a bulldozer to clear dirt and small trees and brush and to install metal fence posts along the border Tullis's property shares with the Property.[2] Gandolfo also cut an access road through the Property.

Patterson died in 2010. George became the successor trustee of the Patterson Trust and title to the Property vested in him as successor trustee. In 2011, George transferred title from himself as successor trustee of the Patterson Trust to himself as an individual, and then to himself as trustee of the George Trust. In 2012, George filed a complaint against defendants alleging causes of action for: (1) trespass; (2) destruction of real property; (3) destruction of trees (Civ. Code, § 3346; Code Civ. Proc., § 733); (4)

---

[1] We deny George's request for judicial notice of the Jerry R. Patterson Revocable Trust and the last will and testament of Jerry R. Patterson because these documents were not before the trial court when it ruled on defendants' motions in limine. (*Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1421, fn. 2.)

[2] Plaintiffs Jonathan Salas and Brenda Kusler own adjoining property. They settled with defendants and are not parties to this appeal. George and defendants disagree on the events leading up to the brushing of the fence line, including whether there was an agreement to install a fence between the two properties, and whether defendants had permission to brush the fence line along the Property.

discomfort and annoyance as a result of trespass; (5) negligence and negligence per se; (6) indemnification; and (7) conversion.  George alleged he owned the Property and defendants "failed to properly excavate the land, trespassed on the [P]roperty . . . and caused the destruction of land, trees and vegetation[.]"  In addition, George alleged defendants' trespass caused him "discomfort and annoyance."  George sought compensatory, statutory, and punitive damages, seeking to recover the amount it would cost to put the Property in "its pre-excavation state" and to compensate him for "damages from the destruction of trees, shrubs and vegetation[.]"  George also sought damages for trespass, annoyance and discomfort.  In their answers, defendants averred, among other things, George was "not an owner or an occupant of the [P]roperty" and had suffered "no cognizable damage."

Defendants moved to bifurcate trial, requesting "the issue of standing . . . be tried before all other issues."  They contended George lacked standing to sue because the claims belonged to Patterson and "were never transferred or assigned to . . . George . . . As such, George is not the real party in interest."  According to defendants, "[t]he real party in interest at the time the incident occurred was . . . Patterson and/or the . . . Patterson . . . Trust."  George opposed the motion to bifurcate and the court denied it.

Defendants then moved in limine to exclude evidence of George's damages, claiming he had "no standing to make a claim for the damages" Patterson allegedly suffered.  As they did in their motion to bifurcate, defendants argued Patterson — not George — was the real party in interest because Patterson owned the Property when the alleged damage occurred and he did not assign his claims to George.  Defendants also argued only Patterson's "personal representative or legal successor in interest, such as his executor or administrator" had standing to sue for damage to the Property and the "proper procedure" was for the executor of the Patterson estate to file the complaint, "alleging his judicially appointed legal capacity as the real party in interest."  Finally, defendants argued only Patterson's estate — as the "'owner of the land'" — could assert statutory claims for tree cutting damages.  Defendants urged the court to exclude evidence of damage to the Property as "irrelevant and legally improper."

In opposition, George argued he was not required to show he owned the Property at the time it was damaged; he claimed he was the real party in interest entitled to sue as successor trustee of the Patterson Trust. George also argued he was not required to prove Patterson assigned or transferred claims to him but argued he could prove such an assignment "through oral acts and implied by . . . conduct" and described what the "evidence [would] establish[.]" Finally, George contended there was no danger of multiplicity of lawsuits because he — and no one else — owned and possessed the Property.

The court heard and granted defendants' motions in limine at an unreported chambers conference. On George's request, the court held a reported hearing to allow George "to make his record." At the outset of the hearing, however, the court explained it had already "resolved" the motions in defendants' favor. Counsel for George argued factual issues regarding George's standing required an evidentiary hearing. Counsel made an offer of proof that George had a possessory interest in the Property at the time of the damage, and that Patterson had assigned his rights to George. Counsel explained Patterson and George "enjoyed a father-and-son-like relationship for many, many years" and that George had "every access to the [P]roperty at any time. . . . He treated the property as his own. He did so" because of his relationship with Patterson and because "he was providing services for Mr. Patterson, such as fixing up the . . . house. . . ."

In response, counsel for Gandolfo observed "the argument was made that he was close to Mr. Patterson, and Mr. Patterson let him use the property periodically. [¶] What we're talking about is a legal right to use the property, as an owner would have, as a tenant who has a lease would have. The mere fact that Mr. Patterson let Mr. George use the property because they were friends, that doesn't give Mr. George the legal standing to basically file a lawsuit for damage that existed at the time that Mr. Patterson was in possession and owned the property." Counsel for Gandolfo argued the "friendship association" between Patterson and George did not confer "the kind of legal standing that we're talking about." The court concluded there was "no need for an evidentiary hearing[.]"

4

When George's counsel argued George had standing as successor trustee, the court disagreed, noting "the trustee at the time of the alleged injury to the alleged bulldozing incident was not . . . George. It was Jerry Patterson. . . . [¶] . . . George was his successor trustee and couldn't act to do anything until he . . . was appointed the actual trustee; and by that time, the damage had happened." Counsel for George pointed out the consequences of defendants' argument — that an action for damages to real property would "dissolve anytime that the original trustee dies" — and explained: "We have a trustee; he died. And guess what? [Defendants have] gotten away with running all over, helter-skelter over the [P]roperty, digging it up . . . without being concerned for any cause of action because it died with the trustee." In response, the court observed "Patterson owns the property. He's the trustee of the trust. By agreement, Gandolfo runs his bulldozer, in some sort of effort to brush the fence line, and whatever he did, he did. Patterson does nothing. Presumably . . . he knew about it. Everyone knew about it. He does nothing. The . . . property passes to . . . George; and all of a sudden . . . George gets it into his head to do something about it."

At the conclusion of the hearing, the court stated it "adhere[d]" to its previous ruling. The court granted defendants' motions in limine and excluded evidence of George's damages. Defendants then moved for nonsuit or directed verdict, claiming George's inability to "establish the requisite standing and damage elements" was "fatal to his entire suit[.]" The court granted the motions, dismissed George's complaint with prejudice, and entered judgment for defendants.

DISCUSSION

I.

*Standard of Review*

"'In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial.' [Citation.] As case law recognizes, however, motions in limine also can function as 'an objection to any and all evidence on the grounds [the] pleadings [are] fatally defective' for failure 'to state a cause of action.' [Citation.] In such cases, the in limine motion 'operate[s] as a general

5

demurrer to [the] complaints or a motion for judgment on the pleadings.' [Citation.] 'Alternatively,' where such motions are granted 'at the outset of trial with reference to evidence already produced in discovery, they may be viewed as the functional equivalent of an order sustaining a demurrer to the evidence, or nonsuit.' [Citation.] 'A motion for nonsuit or demurrer to the evidence concedes the truth of the facts proved, but denies as a matter of law that they sustain the plaintiff's case.' [Citation.]" (*City of Livermore v. Baca* (2012) 205 Cal.App.4th 1460, 1465.) Where, as here, "the court's order excludes all evidence on a particular claim and, as a result, operates as a motion for nonsuit, we review the court's order de novo, examining the record in the light most favorable to the party offering the evidence. [Citation.] In such cases, 'all inferences and conflicts in the evidence must be viewed most favorably to the nonmoving party.' [Citation.]" (*Id.* at p. 1465.)

## II.

### *As Successor Trustee, George Was the Real Party in Interest with Standing to Sue for Damage to the Property*

Except as otherwise provided by statute, "[e]very action must be prosecuted in the name of the real party in interest. . . ." (Code Civ. Proc., § 367.) "Real party in interest issues are often discussed in terms of plaintiff's 'standing to sue.'" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 2:2, p. 2-2 (Rutter); but see *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 989-992 [the term "standing" is a misnomer and the issue is whether the plaintiff is a real party in interest].) "Standing is the threshold element required to state a cause of action . . . . To have standing to sue, a person, or those whom he properly represents, must '"have a real interest in the ultimate adjudication because [he] has [either] suffered [or] is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." [Citation.]' [Citation.] . . . A real party in interest is one who has 'an actual and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action.' [Citation.]" (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031-1032;

*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1001.) "'The purpose of the real party in interest requirement is to assure that any judgment rendered will bar the owner of the claim sued upon against relitigating. "It is to save a defendant, against whom a judgment may be obtained, against further harassment or vexation at the hands of some other claimant to the same demand." [Citations.]'" (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1094 (*O'Flaherty*); *Standard Fire Ins. Co. v. Spectrum Community Assn.* (2006) 141 Cal.App.4th 1117, 1140 (*Standard Fire*).)

In the trial court, defendants claimed George lacked standing because he did not own the Property when the alleged damage occurred. The court was persuaded: it concluded "the trustee at the time of the alleged injury to the alleged bulldozing incident was not . . . George. It was Jerry Patterson. . . . [¶] . . . George was his successor trustee and couldn't act to do anything until he . . . was appointed the actual trustee; and by that time, the damage had happened." Defendants — and the trial court — are mistaken.

"'An estate or trust is not a legal entity, and therefore has neither capacity nor standing to sue[.]' Title to estate or trust assets is held by the . . . trustee, on behalf of the beneficiaries. Thus, as to claims held by an estate or trust, the . . . trustee is the real party in interest. Such fiduciary has the right to sue[.]' [Citation.]" (*O'Flaherty, supra,* 115 Cal.App.4th at p. 1095; *In re Estate of Bowles* (2008) 169 Cal.App.4th 686, 692; see also *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3 (*Moeller*) [the "trustee . . . is the real party in interest in litigation involving trust property"].) The "trustee has the power to prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." (Prob. Code, § 16249.)[3]

When Patterson died, George became the successor trustee with standing to sue for damage to the Property. A successor trustee "'succeed[s] to *all* the rights, duties, and responsibilities of his predecessors'" (*Moeller, supra,* 16 Cal.4th at p. 1131) and "can

---

[3] Unless noted, all further statutory references are to the Probate Code.

7

maintain the same actions or suits that the original trustee could have maintained." (5 Scott & Ascher on Trusts (5th ed. 2006) § 28.1.3, p. 1936, fn. omitted.) As the successor trustee, George "stood in the shoes" of Patterson and was the real party in interest entitled to sue for damage to the Property. (*Eddy v. Fields* (2004) 121 Cal.App.4th 1543, 1548; see also *Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 527, 530 [probate estate's successor fiduciary had standing to sue attorneys retained by predecessor fiduciary for malpractice committed during predecessor's term].)

We are not persuaded by defendants' argument — raised for the first time on appeal — that George failed to establish standing because his complaint did not allege his successor trustee status.[4] "Where the legal title to property is vested in the trustee, it is unnecessary to state in the complaint the means by which plaintiff acquired it, and so far as concerns the defendant he is the real party in interest and may sue in his own name." (*McKoin v. Rosefelt* (1944) 66 Cal.App.2d 757, 768.) And where — as here — the trustee and beneficiary of a trust are the same person, that person may sue in his own name, without mentioning the trust. (*Hassoldt v. Patrick Media Group, Inc.* (2000) 84 Cal.App.4th 153, 171-172, disapproved on another ground in *People v. Rogers* (2013) 57 Cal.4th 296; see also Rutter, *supra,* ¶ 2:6, p. 2-3.)

Next, defendants argue George lacked standing because his duties as successor trustee concluded when he transferred the Property out of the Patterson Trust. We disagree. Because the Patterson Trust document is not before us, we are unable to determine whether it terminated, either pursuant to an express provision in the trust or pursuant to section 15407, subdivision (a), which identifies when a trust terminates. (§ 15407, subd. (a)(1)-(5).) But even when a trust terminates, "the trustee continues to have

---

[4] We are puzzled by defendants' contention the "proper procedure in this case was for the executor of the Patterson estate to file the trespass complaint." "Property held in a revocable living trust is *not* subject to probate administration after the settlor dies." (*Valentine v. Read* (1996) 50 Cal.App.4th 787, 792, italics added.) In the trial court, counsel for Gandolfo acknowledged "there is no probate, there is no executor appointed[.]" We also reject defendants' claim — made at oral argument — that the cause of action for damage to the Property belonged to the Patterson Trust, and there was no evidence Patterson transferred the cause of action to the Patterson Trust.

the powers reasonably necessary under the circumstances to wind up the affairs of the trust." (§ 15407, subd. (b).) This includes "'"'such powers as are '"'necessary or proper for the preservation of the trust property,'"'" including "'"'the power to maintain actions on behalf of the trust. [Citations.]" (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1082, fn. 3.) Assuming for the sake of argument the Patterson Trust terminated, George — as successor trustee — had the power to "wind up the affairs of the trust" and sue for damage to trust property. (§ 15407, subd. (b); see also § 16249, & *Hise v. Superior Court* (1943) 21 Cal.2d 614 [even if liquidation of trust assets terminated trust, trustee's obligations continued until trust proceeds were distributed].)

*Gurkewitz v. Haberman* (1982) 137 Cal.App.3d 328 (*Haberman*) is instructive. There, defendant attorneys represented two trustees in the trust's action against an insurance company. After the trustees' complaint was dismissed for failure to prosecute, the trustees sued the attorneys for malpractice. (*Id.* at pp. 331-332.) On appeal, the defendants argued the trustees could not sue on behalf of the trust because the legal malpractice suit "arose after the creation of the trust, was not contemplated at the time of the creation of the trust agreement, and indeed did not accrue until the time for termination of the trust had passed." (*Id.* at p. 337.) The *Haberman* court disagreed and concluded "[t]he malpractice action arose as part of the trustees' duty to the trust—to effect the most favorable outcome possible for the beneficiaries in all matters having to do with the [the trust property]. The pursuit of this action was part of the trustees' powers and duties appropriate to winding up the affairs of the trust." (*Id.* at p. 338.)

The same is true here. Even if we assume the Patterson Trust terminated when George transferred the Property out of the Patterson Trust, George's lawsuit against defendants "was part of [his] powers and duties appropriate to winding up the affairs of the trust." (*Haberman*, *supra*, 137 Cal.App.3d at p. 338.) Defendants do not discuss *Gurkewitz* or attempt to distinguish it. Instead, Tullis relies on *Salvation Army v. Price* (1995) 36 Cal.App.4th 1619 (*Price*). In *Price*, the parties agreed the trust terminated, and the issue on appeal was whether and when charitable beneficiaries acquired a vested interest in trust assets. (*Id.* at p. 1624.) *Price* has no application here because the parties

9

do not agree the Patterson Trust terminated, nor does this case concern when a charitable beneficiary's title to trust assets vests.

As we have explained, the purpose underlying the real party in interest rule is to "'"protect a defendant from a multiplicity of suits and the further annoyance and vexation at the hands of other claimants *to the same demand*. [Citations.]'" (*Standard Fire, supra,* 141 Cal.App.4th at p. 1140.) There is no potential for a "multiplicity of suits" here, nor any possibility of "further annoyance and vexation at the hands of other claims *to the same demand*." (*Ibid.*) Patterson is deceased. George is the successor trustee and the sole beneficiary of the Patterson Trust. He is also the owner of the Property. Defendants have not identified any parties "making competing claims to the same damages." (*Id.* at p. 1141.) Moreover, defendants have not argued — and cannot establish — the purpose underlying the real party in interest requirement "would be thwarted if [George] were construed" to hold claims against them. (*Ibid.*)

We conclude George, as successor trustee to the Patterson Trust, was the real party in interest with standing to sue defendants for damage to the Property. Having reached this result, we need not consider George's claim that he also had standing to sue as an assignee.

III.

*A Factual Dispute Regarding Whether George Occupied the Property Precluded the Court from Granting Defendants' in Limine Motions*

As stated above, the complaint alleged a claim for discomfort and annoyance as a result of trespass. George's status as successor trustee did not confer standing to sue for discomfort and annoyance as a result of trespass. As a general rule, only an "'"occupant"'" of land may recover damages for annoyance and discomfort arising out of a trespass. (*Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 456.) "'[O]ccupancy' necessarily entails some physical presence on the property. . . . [¶] Annoyance and discomfort damages are intended to compensate a plaintiff for the loss of his or her peaceful occupation and enjoyment of the property." (*Ibid.*)

10

Tullis contends George cannot sue for discomfort and annoyance as a result of trespass because he did not occupy the Property when it was allegedly damaged. In response, George contends he had standing to raise this claim because he was a "trust beneficiary in actual possession" of the Property. There is clearly a factual dispute here regarding whether George was an occupant of the Property during the relevant time period: defendants contend George did not occupy or possess the property at the time of the alleged damage, and George claims he did. At the hearing on defendants' in limine motions, counsel for George requested an evidentiary hearing and made an offer of proof that Patterson and George "enjoyed a father-and-son-like relationship for many, many years" and that George had "every access to the [P]roperty at any time. . . . He treated the property as his own. He did so" because of his relationship with Patterson and because "he was providing services for Mr. Patterson, such as fixing up the . . . house. . . ." The court rejected George's request for an evidentiary hearing and his offer of proof, the effect of which was to preclude George from presenting any evidence to establish his standing to bring the claim for discomfort and annoyance as a result of trespass.

This was error. "To have the sufficiency of the pleading or the existence of triable issues of material fact decided in the guise of a motion in limine is a perversion of the process." (*R&B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 371, conc. opn. of Rylaarsdam, J.); *Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331, 1337-1338 [expressing "disfavor" for a motion in limine that "test[ed] the factual basis for a claim" and noting a motion in limine which "was, in effect, a motion for summary judgment or for nonsuit[,]" could not be granted where there was a conflict in the evidence].)

DISPOSITION

The judgment is reversed. The orders granting defendants' motions in limine excluding George's damages and their motions for nonsuit or directed verdict are reversed and the court is directed to deny these motions. George is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

11

_____

Jones, P. J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.